STATE OF NEBRASKA, APPELLEE, v. CHARLES F. BUNDY, APPELLANT.

167 N. W. 2d 770

Filed May 9, 1969. No. 37127

Joseph H. Badami, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is a proceeding brought under the Post Conviction Act. On March 8, 1966, petitioner was convicted by a jury of the crime of burglary. On April 19, 1966, he was sentenced to a term of 10 years for burglary and for being an habitual criminal. He prosecuted an appeal to this court where his conviction was affirmed. See State v. Bundy, 181 Neb. 160, 147 N. W. 2d 500.

Petitioner premises his present action on the following allegation from his petition: "* * * defendant was interrogated by Lincoln Police Captain Lowell Sellmeyer, subsequent to his arrest over a period of several days, and defendant was not represented nor advised by counsel and did not waive his constitutional right to counsel and the general inquiry into an unsolved crime focused upon defendant and all unvoluntary statements extracted by the police during such unlawful interrogation was used against him at trial thereby violating defendant's constitutional rights to the assistance of counsel in violation of the Sixth and Fourteenth Amendment to the Constitution of the United States."

Petitioner testified in this proceeding that in addition to not being advised as to his rights, he requested permission to contact an attorney and to make a telephone call, and that these requests were denied. It is his testimony that he was questioned by Captain Sellmeyer between 8 and 9 p. m. and at 11 p. m., January 9, 1966; between 2 and 3 a. m., January 10; between 3 and 4 a. m., January 11; and between 2 and 3 a. m., January

12. The robbery occurred sometime between 6:45 and 7:15 p. m., January 9, 1966.

Captain Sellmeyer, who was called as a witness by the State, testified that he was the captain in charge of the 10:30 p.m. to 7 a.m. police shift, and that on January 9, 1966, he did not come on duty until sometime after 10 p. m. He did not interview petitioner until 4:30 a. m., January 10. His testimony as to what occurred on that occasion is as follows: "I told Mr. Bundy that he had a right to contact an attorney, a right to remain silent, and a right to know that everything or anything that he might say could be used against him in a court proceeding. And I told him I wanted to discuss with him the burglary at 946 North 8th, and he agreed to discuss it with me, and told me that he had not committed the burglary and did not need an attorney. I offered him a telephone book as a guide to find an attorney in the yellow pages and he said that he did not need an attorney."

Petitioner at no time ever admitted any involvement in the burglary in question, but denied even knowing the location of the premises burglarized. The statements made covered his movements during the critical period and were exculpatory in nature. While there was a variance between petitioner's testimony at the trial and that of Captain Sellmeyer on those movements, it involved different versions of where petitioner was in the Cole home and whether or not Mrs. Cole admitted him when he came back into the house, as he said, after refusing to go with Mr. Cole. The testimony of Captain Sellmeyer was corroborated at the trial in several respects by the testimony of other witnesses and is challenged only by the testimony of the petitioner himself. Actually, the following testimony of petitioner at the trial tends to discredit his present contention and to support Captain Sellmeyer's testimony: "Q Did the officers question you as to what your whereabouts were on the evening of the 9th of January? A They had not.

Q You mean that all the time you have been in custody no officers asked you where you were on the 9th of January in the evening? A Not until I got to the police station and the police tried to say I did something that I didn't. Q Please try to answer my question. You listen real close. Did any officer talk to you on the evening of the 9th of January as to where you were on that particular evening? A No, not that I recall. They had asked me my name and that. Q Has any officer during the time that you have been in custody asked you what your activities were on the evening of the 9th of January? A Mr. Sellmeyer, I believe, later in the morning, about 3:00 or 4:00 o'clock in the morning, asked me what I was doing or something. Q And at that time did you ever tell Lt. Sellmeyer that you were minding a baby in the bedroom of the Cole home? A (No response) Q Did you ever tell him that? A I don't recall whether I did or not. Q You don't know whether or not you ever mentioned that to him? A No. I mentioned that I had drank—was drinking a gin and tonic that I had made. Q Right for the moment let's not get into what you did mention; let's see if you can tell me whether you recall mentioning these specific facts. Can you state whether or not you told Lt. Sellmeyer that you were watching a baby of Kathleen Dougherty's in the bedroom of the Cole home on the evening of the 9th of January at approximately 7:30 or thereabouts in the evening? Did you ever make such a statement to Lt. Sellmeyer? A No, because I don't believe he asked me."

Petitioner cites three federal cases to support his premise that his constitutional rights were violated: Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977; Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974; and Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

Petitioner's trial commenced March 4, 1966, so only

Escobedo, which was decided June 22, 1964, was applicable at that time. The decision in Miranda was not rendered until June 13, 1966. Johnson v. New Jersey, *supra*, is authority for the proposition that Escobedo and Miranda apply only to cases commenced after those decisions were announced. Escobedo requires that prior to custodial interrogation a suspect shall be warned of his absolute constitutional right to remain silent and, at least on request, the right to the assistance of counsel.

Petitioner testified in the post conviction hearing that Captain Sellmeyer interrogated him between 8 and 9 p.m. on the evening of his arrest, and again at 11 p.m. On both of those occasions he testified he made statements substantially like those made at the 4:30 a.m. interrogation January 10. This is in direct contradiction to his testimony at the trial and is the basis on which he seeks to sustain this action. He admits in this hearing that he did not request an attorney from Captain Sellmeyer on January 10, but now claims he did at the interrogation on January 9. Obviously, if his testimony at the trial is to be believed, then he could not have requested an attorney on January 9.

While inconsistency does not automatically destroy the credibility of a witness where it involves extremely relevant and material evidence, we cannot ignore the conclusion reached by the trier of the facts. When a witness gives testimony which as to material facts is in such obvious and irreconcilable conflict that if part of it be true the rest must be false, it ordinarily may not be accepted as the basis of a judicial conclusion.

Petitioner was not unfamiliar with criminal procedures. He had acquired sufficient experience in those procedures to merit an habitual criminal sentence herein. He had a prior acquaintance with Captain Sellmeyer. It strains credulity to believe, if the facts were as petitioner now contends, that he would have testified as he did at the trial.

On the record herein, we find that Captain Sellmeyer

adequately protected the rights of petitioner within Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, and further that it sustains a valid waiver by petitioner of the presence of counsel at his interrogation. Petitioner was represented by court-appointed counsel at all stages of his trial, and had court-appointed counsel in this proceeding.

The judgment overruling petitioner's motion to vacate and set aside the sentence is correct and is affirmed.

AFFIRMED.